IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| Angel Miller, and Steven Vanness, *et al.* | : | |
| | | Case No. 2:22-cv-2210 |
| Plaintiffs, | : | Judge Sarah D. Morrison |
| | | Magistrate Judge Kimberly A. Jolson |
| vs. | : | |
| | | |
| United Debt Settlement, LLC, *et al.* | : | |
| | | |
| Defendants, | : | |

## MOTION FOR CLASS CERTIFICATION

Now come Plaintiffs, by and through undersigned counsel, and, pursuant Fed. R. Civ. P. 23, hereby move this Court for an Order certifying the proposed class as outlined in its Class Action Complaint.

**I.      INTRODUCTION**

On November 17, 2022, Plaintiffs obtained Default Judgment against Defendants United Debt Settlement, LLC ("UDS") and Everything Is In Stock, LLC ("Everything") pursuant to Fed. R. Civ. P. 55(a).  On January 17, 2023, Plaintiffs obtained Default Judgment against Defendant Gabriel Gorelik ("Gorelik") pursuant to Fed. R. Civ. P. 55(a).  Plaintiffs have not yet filed a Motion for Default Judgment against UDS, Everything and Gorelik because a Class must be Certified before moving for Default Judgment against Defendants on behalf of the entire Class.

This case involves the illegal use of and access to the private financial data in the consumer reports of likely tens of thousands of financially distressed consumers. The information was accessed for the illegal purpose of marketing debt settlement and/or consolidation services. Defendants obtained lists of consumer data, lists referred to as "pre-screened lists," including Plaintiffs'. Defendants used the lists to market debt settlement services.

The pre-screened lists at issue are compiled by a consumer reporting agency using filters

1

including a base level of unsecured debt balances, a minimum level of unsecured trade lines, and various other filters bearing on a consumer's credit worthiness. The pre-screened lists constitute consumer reports that may only be accessed and used for a permissible purpose. *See*, 15 U.S. C. Section 1681b(f); *See*, *Trans Union v FTC,* 245 F.3d 809 (U.S. App. D.C. 2001). Marketing debt settlement services is not a permissible purpose under the Fair Credit Reporting Act ("FCRA")

## II. RELEVANT FACTS

All named Defendants engaged in a scheme to obtain and use protected consumer reporting data to market debt settlement and credit repair services via mailers directed to Plaintiff Angel Miller ("Miller") and Steven Vanness ("Vanness") in the State of Ohio. (Complaint ¶ 14). To that end, United, through an authorized agent, compiled or direct an agent to compile a "pre-screened list" containing the names and addresses of consumers in financial distress. (Complaint ¶ 15). United obtained and used these pre-screened lists containing the names and addresses of consumers who met certain criteria such as minimum debt balances or high interest rates, etc.; Miller and Vanness were on at least two of these lists. (Complaint ¶ 16).

These lists are compiled by a consumer reporting agency using the filters supplied to the consumer reporting agency by United's marketing agent. (Complaint ¶ 17). The lists constitute consumer reports under the FCRA. (Complaint ¶ 18). United then arranged for the preparation and mass mailing of marketing letters to the consumers on the pre-screened lists obtained from the consumer reporting agency. (Complaint ¶ 19).

United and its co-defendants did not offer a firm offer of credit to Ohio consumers it sent to Vanness template solicitation. (Complaint ¶ 20). United and its co-defendants never intended to honor the purported firm offer of credit it sent to Ohio consumers, including the sham firm offer of credit sent to Miller. United used these solicitations for the sole purpose of marketing debt settlement. (Complaint 21).

2

## III.    LAW AND ANALYSIS

### A.    Default Motion procedure.

The Northern District recently outlined the Default Judgment procedure with respect to a class action:

> Plaintiff has not yet filed a Motion for Default Judgment against Defendant because the class must be certified prior to moving for default judgment against Defendant on behalf of the entire class. Plaintiff has nonetheless completed the requisite first step under *Fed. R. Div. P. 55(a)* of obtaining an entry of default by the clerk. *See, e.g., Hartman v. Lowry*, No. 4: 20-cv-2752, 2021 U.S. Dist. LEXIS 67877, 2021 WL 1246864, at *8 (N.D. Ohio Mar. 26, 2021)* ("Securing a default judgment is a two-step process under *Fed. R. Civ. P. 55.* First, under subsection a . . . . the clerk must enter the party's default.") (emphasis omitted).

*See, Coop. Med. Health Care Corp., P.A. v. Medical Synergy, Inc.,* 2021 U.S. LEXIS 161258, * 4, (FN1).

The Clerk's entry of Default Judgment is not a barrier to certification of the proposed class:

> As an initial matter, the Court notes that "the Clerk's entry of default in this case is no barrier to certification of the Plaintiff's proposed class." *Heinz v. Dubell Lumber Co.*, No. 19-8778, 2020 U.S. Dist. LEXIS 36184, 2020 WL 1030785, at *1 (D.N.J. Mar 30, 2020). See also *Toler v. Glob, Coll. of Nat. Med.*, No. 13-10433, 2015 U.S. Dist. LEXIS 46907, 2015 WL 1611274, at *3 (E.D. Mich. Apr. 10, 2015) ("In cases where a Defendant has failed to appear, a Clerk's entry of default has not been held to prevent the Court from considering whether to certify a class prior to the entry of a default judgment against a Defendant.") (citations omitted); *Lap Distribs., Inc. v. Glob Contract-Int'l Publ'g Corp.*, No. 19-6317, 2020 U.S. Dist. LEXIS 57672, 2020 WL 1616505, at *2 (D.N.J. Apr. 1, 2020); *Cortes v. Nat'l Credit Adjusters, LLC*, No. 2:16-00823, 2017 U.S. Dist. LEXIS 121940, 2017 WL 3284797, at *2 (E.D. Cal. Aug 2, 2017). As another Court in this District recently explained:
>
>> A Clerk's entry of default does not change the analysis that a district court must undertake in deciding whether to certify a class because any other conclusion might give defendants an incentive to default in situations where class certification seems likely. To that end, certification under *Rule 23* remains a procedural requirement for a class to recover damages. A court may therefore only certify a class action if the court is satisfied, after a rigorous analysis, that the prerequisites of *Federal Rule of Civil Procedure 23* have been met.

3

*See, Coop. Med. Health Care Corp., P.A. v. Medical Synergy, Inc.,* 2021 U.S. LEXIS 161258, * 4.

In terms of class certification, because Defendants have defaulted, the factual allegations in Plaintiffs' Complaint are deemed true except as it relates to damages. Several courts have indicated this includes the pre-requisites for class certification:

> Because the Defendant has defaulted, "the factual allegations in the complaint, except those related to the amount of damages, are deemed true." *Barnett v. E-Waste Systems, Inc.* No. 1:14-cv-908, 2015 U.S. Dist. LEXIS 50997, 2015 WL 1757302, at *3 (S.D. Ohio Apr. 17, 2015) (citing *Antoine v. Atlas Turner, Inc.,* 66 F.3d 105, 110 (6th Cir. 1995)). Moreover, several courts have held that "this doctrine extends to specific allegations relating to the prerequisites for class certification under Federal *Rule 23."* *Lehman,* 2019 U.S. Dist. LEXIS 230289, 2019 WL 8405591, at *1. See also *Juan Canizales Conde v. City Compassionate Caregivers, Inc.,* No. CV-20-5302, 2020 U.S. Dist. LEXIS 253363, 2020 WL 9259837, at *2 (C.D. Cal. Nov. 10, 2020) ("'A defaulted defendant is deemed to admit the plaintiff's well-pleaded allegations of fact,' including specifically allegations relating to the prerequisites for class certification under Federal *Rule 23*.") (quoting *Jackson v. Paycron, Inc.,* No. 8:19-CV-00609, 2019 U.S. Dist. LEXIS 80325, 2019 WL 2085430, at *2 (M.D. Fla. May 13, 2019)).
>
> Accordingly, the Court will proceed to consider Plaintiff's Motion for Class Certification, below.

*See, Coop. Med. Health Care Corp., P.A. v. Medical Synergy, Inc.,* 2021 U.S. LEXIS 161258, * 4-* 5.

### B. Class Action Requirements

Fed. R. Civ. Pro. 23 governs class-action litigation in federal court. To be certified under Fed. R. C. Pro. 23, a court must find by rigorous analysis that the four explicit criteria of Rule 23(a) exist (numerosity, commonality, typicality, and adequate representation), as well as an implied element of Rule 23(a) (ascertainability or identifiability), and that one of three criteria set forth in Rule 23(b) exist:

    1.    *Ascertainability* – the class definition must be sufficiently definite so that

          it is administratively feasible for the court to determine class membership
2.    **_Numerosity_** – the class is so large that joinder is impracticable
3.    **_Commonality_** – questions of law or fact common to the class
4.    **_Typicality_** – the claims or defenses of the named parties are typical of the class
5.    **_Adequacy_** – the class representatives will fairly and adequately protect the class
6.    One of the **_Rule 23(b)_** requirements

See *Young v. Nationwide Mut. Ins. Co.,* 693 F.3d 532, 537-545 (6th Cir. 2012); *Macy v. GS Services Limited Partnership,* 897 F.2d 747, 761-762 (6th Cir. 2018); *Clemons v. Norton Healthcare Inc. Ret. Plan,* 890 F.23d 254, 278-279 (6th Cir. 2018).

    Regarding these six criteria, "**When evaluating whether to certify the class, the district court must take allegations of plaintiffs as true,** with any doubts resolved in favor of certification." *Trollinger v. Tyson Foods, Inc.,* 2006 WL 2924938, *4 (E.D. Tenn. 2006) (emphasis added), citing *Iron Workers Local Union No. 17 Ins. Fund v. Philip Morris Co.,* 29F.Supp.2d825, 830 (N.D.Ohio 1998); see also *Thompson v. Community Ins. Co.,* 213 F.R.D. 284, 291 (S.D. Ohio 2002) ("The district court must take the allegations of plaintiffs as true."). Furthermore, the Northern District has stated that although "the Court must undertake a 'rigorous analysis' in certifying a class… 'any doubts as to certification should be resolved in the favor of Plaintiffs.'" *Meznarich v. Morgan Waldron Ins. Management, LLC,* 2011 WL 4634021, *8 (N.D. Ohio 2011), citing *Thompson,* supra; see also *Gasperoni v. Metabolife, Intern. Inc.,* 2000 WL 33365948, *8 (E.D. Mich. 2000) ("any doubts concerning the property of a class certification should be resolved in favor of upholding the class").

    In making the determination regarding certification, "Courts should consider the merits in so far as 'they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied.'" *Humphrey v. Stored Value Cards,* 2018 WL 6011052, * (N.D. Ohio 2018), citing *Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds,* 568 U.S. 455, 466 (2013).

5

### 1. Ascertainability

As cited by the Northern District court, ascertainability means that "the class definition must be sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member." *Humphrey, supra,* *5, quoting *Young, supra,* 693 F.3d at 537-538, *citing* 5 James W. Moore et al., Moore's Federal Practice § 23.21(1) (Matthew Bender 3d ed. 1997).

Every class action requires some determination of whether any particular individual, any potential class member, is truly in or out of the class. This implied requirement of certification simply means that "the class is objectively defined." *Id.*; see also *Hamilton v. Ohio Sav. Bank,* 82 Ohio St.3d 67, 71-73 (1998) (Regarding Ohio's equivalent Civ.R. 23, the Ohio Supreme Court held that a definition is sufficiently definite when permits identification of class members with "a reasonable effort" and "the court need only look to the actions or practices of defendant to determine whether an individual is a member of the class."

In the case at bar, Plaintiff proposes a class for certification defined as follows, or such other classes or subclasses as may be appropriate:

> **Ohio citizens on the prescreened lists Defendants obtained, either directly or through and agent, and/or used from May 1, 2017 to the present for marketing debt relief services.**

Plaintiffs also identify the following sub-classes:

a. Ohio Citizens who received the mailer with the template attached as Exhibit A from May 1, 2017 to the present, and who, after responding to the mailer by calling the telephone number on the mailer, were bait and switched from a loan offer to a debt settlement program sales pitch.

b. Ohio Citizens who received the mailer template attached as Exhibit A or B from May 1, 2017 to the present, and who, after responding to the mailer by calling the telephone number on the mailer, were then convinced under false pretense to authorize a credit inquiry by United, only to have their consumer report accessed for a "Credit Transaction" by Elite Restaurant.

    c. Ohio Citizens who received the mailer template attached as Exhibit A or B from May 2, 2017 to the present, and who then called United in response to the mailer because they were deceived by the false and deceptive representations on the face of the mailers.

Indeed, this class definition is limited in number and by time. Moreover, it is specific and clear, such that the parties and the Court can readily determine from Defendants' practices, its records, and the records of any of Defendants' agents, whether a particular individual is a member of each class.

### 2. **Numerosity**

To be certified, a class must be "so numerous that joinder of all members is impracticable." Fed. R. Civ. Pro. 23(a)(1).

In practice, evidence of more than forty potential class member satisfies this numerosity requirement. *Humphey,* *3, citing *Pund v. City of Bedford, Ohio,* 2017 WL 3219710 (N.D. Ohio 2017), *quoting* Newberg on Class Actions § 3:12 (5th ed. 2017); see also *Todd S. Elwert, supra* ("Elwert's complaint alleges that the defendants sent the Fax Ad and other unsolicited faxes to more than forty other persons").

Here, Plaintiffs alleged Defendants illegally accessed the consumer reports of tens of thousands of financially distressed Ohio consumers. Therefore, numerosity is met.

### 3. **Commonality**

Rule 23(a)(2) requires that "there are questions of law or fact common to the class." Commonality is satisfied where a common contention is capable of class wide resolution, meaning "that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Humphrey, supra. 3,* citing *Walmart Stores, Inc. v. Dukes,* 564 U.S. 338, 350-351 (2013) & *In re. Whirlpool Corp. Front-Load Washer Prod. Liab. Litig,* 722 F.3d 838, 853 (6th Cir. 2013). Or, can a class-wide proceeding "generate common answers apt to drive

7

the resolution of the litigation." *Id.*

The commonality test is not a demanding requirement. *Id.,* see also *Sprague v. General Motors Corporation,* 133 F. 3d 388, 397 (6th Cir. 1998).

To establish commonality, the class needs to share only a *single* common issue. *Jammal v. American Family Ins. Group,* 2016 W.L. 815576 (N.D. Ohio 2016); *Edwards v. McCormick,* 196 F.R.D. 487 (S.D. Ohio 2000); *Mann v. Acclaim,* 232 F.R.D. 278 (S.D. Ohio 2003). The commonality test "is qualitative rather than quantitative, that is, there need be only a single issue common to all members of the class." *Newberg on Class Actions,* § 3.10; *In re American Medical Systems, Inc.,* 75 F.3d 1069, 1080 (6th Cir. 1996).

Here, Plaintiffs "common connection" is that Defendants violated the FCRA by accessing the consumer reports of class members. Therefore, determining the common facts and legal issues for this contention will "in one stroke" resolve the issues central to each class members' claim and provide a "resolution for the litigation." Accordingly, the commonality element is met.

**4. Typicality**

Typicality exists where the lead plaintiffs' claims "arise from the same . . . practice or course of conduct that gives rise to the claims of the other class members, and if his or her claims are based on the same legal theory." *Beatti v. CenturyTel, Inc.* 511 F.3d 554, 561 (6th Cir. 2007); see also *American Medical Systems, supra,* at 1082, quoting *Herbert B. Newberg & Alba Conte, Newberg on Class Actions, 4th Ed.,* § 3.13, pp. 3-76 (3d ed. 1992). If the claims arise from a similar course of conduct and share the same legal theory, factual differences will not defeat typicality. *James v. City of Dallas,* 254 F.3d 551, 571 (5th Cir. 2001); *Newberg* § 3.13, pp. 326-327.

So explained, typicality tends to merge with commonality. *General Telephone Company of the Southwest v. Falcon,* 457 U.S. 147, 158, n. 13, 102 S. Ct. 2364, 72 L. Ed. 2d 740, (1982).

Here, Plaintiffs' claims are not only typical but identical to the claims of other class

members. Plaintiffs' claims arise from what they allege to be a common practice and conduct of Defendants; i.e., illegally obtaining and using the consumer reports of Ohio consumers under false pretenses in order to market debt settlement services. Based on Defendants' conduct and practice through the mailing campaigns, Plaintiffs assert a common theory of liability for all class members against Defendants. Therefore, the typicality requirement is met.

### 5. Adequacy of Representation

Fed. R. Civ. Pro. 23(a)(4) provides that "the representative parties will fairly and adequately protect the interest of the class." This *adequacy* requirement necessitates that a class representative have interest in common with the class and that the representatives appear willing to vigorously prosecute the class interests. *Humphrey, supra,* \*4-5. This element also "serves to uncover conflicts" between the class representatives and the class. *Young, supra,* 683 F.3d at 543. Adequacy applies to both lead plaintiffs and their counsel. *Humphrey, supra,* \*4-5.

Regarding class counsel, attorney Brian M. Garvine and the Law Office of Brian M. Garvine, LLC and Jeremiah Heck and Luftman, Heck & Associates, LLP, who are lead counsel, have extensive consumer and class action experience. They have successfully litigated class action cases including, but not limited to:

*Blasi, et al v. United Debt Services, Inc., et al.*
United States District Court, Southern District of Ohio, Eastern Division
Case No. 2:14-cv-0083

*Hopper v. Credit Associates, LLC*
United States District Court, Southern District of Ohio, Eastern Division
Case No. 2:20-cv-522

Regarding the adequacy of a class representative, Plaintiffs' interests are common to the class as described herein. Plaintiffs' Complaint evidences a desire to prosecute the class interests. Plaintiffs have no relationship with Defendants, except as the lead Plaintiffs in this action. Further, there is nothing in the record that suggests that Plaintiffs' interest conflict at all with the class.

9

Plaintiffs' interests are antagonistic to Defendants, allowing them to vigorously pursue the claims of the class. Consequently, Plaintiffs will be adequate class representatives. Accordingly, the adequacy requirement is satisfied both with respect to Plaintiffs and their counsel.

### C. Fed. R. Civ. Pro. 23(B) Options

In addition to the requirements for certification under Fed. R. Civ. Pro. 23(a), the Court must find that one of three requirements under Fed. R. Civ. Pro. 23(b) exist to certify a class:

A class action may be maintained if Rule 23(a) is satisfied and if:

(1) prosecuting separate actions by or against individual class members would create a risk of:

    (A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or

    (B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests;

(2) the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole; or

(3) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include:

    (A) the class members' interests in individually controlling the prosecution or defense of separate actions;

    (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;

    (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

    (D) the likely difficulties in managing a class action.

10

Here, certification under Fed. R. Civ. Pro. 23(B)(3) is proper, because common issues *predominate* over individual issues and proceeding as a class action is the *superior* method of adjudication. *Jammal, supra,* 2016 WL 815576, *6; *Humphrey, supra,* 2018 WL 6011052, *6-8.

### 1. Predominance

Class claims are predominant when they are "sufficiently cohesive to warrant adjudication by representation." *Amchem Prod., Inc. v. Windsor,* 521 U.S. 591, 623 (1997); *Tyson Foods, Inc. v. Bouaphekeo,* 136 S. Ct. 1036, 1045 (2016). This requirement is met where the common issues "are more prevalent or important than the non-common, aggregation defeating, individual issue." *Id.* Predominance does not require finding that individual issues do not exist, but a court must weigh the relevant importance of individual and common issues. *Jammal, supra,* 2016 WL 815576, *6, citing *Rockey v. Courtesy Motors, Inc.,* 199 F.R.D. 578, 588 (W.D. Mich. 2001).

Here, there are no significant individual issues. All issues relevant to Plaintiffs' case and the class are the same. All issues revolve around what Plaintiffs allege was a common practice and standardized conduct engaged in by Defendants during the relevant time. The theory of liability based on Defendants' conduct is equally applicable to all class members. Therefore, predominance exists.

### 2. Superiority

Superiority requires consideration of the four factors list in Fed. R. Civ. Pro. 23(B)(3): (A) the class members' interest in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action. *Humphrey,* *6. In this regard, proceeding as a class action is generally considered superior where "small

recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights." *Amchem, supra,* p. 617; see also *Hamilton, supra,* pp. 79-80 (the Ohio Supreme Court has held similarly that a primary purpose Rule 23(B)(3) is to enable "numerous persons who have small claims that might not be worth litigating in individual actions to combine their resources and bring an action to vindicate their collective rights.").

Additionally, the Sixth Circuit has held that cases arising from an alleged "course of wrongful conduct" are particularly well-suited for class certification. *Young, supra,* 683 F.3d at 545, quoting *Powers v. Hamilton County Pub. Defender Com'n,* 501 F.3d 619 (6th Cir. 2007); see also *Pavlov v. Continental Casualty Co.,* 2009 WL 10689011, *6 (N.D. Ohio 2009).

In this regard, Judge Loi recently wrote:

> "There is a strong public interest in encouraging settlement of complex litigation and class action suits because they are 'notoriously difficult and unpredictable' and settlement conserves judicial resources." *In re Cardizem,* 218 F.R.D. at 530 (quoting *Granada Invs., Inc. v. DWG Corp.,* 962 F.2d 1203, 1205 (6th Cir. 1992). Likewise, the public interest is served by enforcing the JFPA. Arguably, class actions are the only effective means to enforcing the JFPA because individual actions are unlikely. Therefore, the public interest factor weighs in favor of approving the settlement agreement.

*Todd S. Elwert, supra,* *3.

Applying these criteria here, individual class members would have little interest in pursuing separate actions, because of the small amount of potential damages available to each class member for violations of the FCRA. Also, considering the cost and these financial barriers to any law, class members are either resigned to do nothing, or perceive that their damages are in amounts, that, when taken individually, are too small to justify the expense of separate lawsuits. However, if their damages are aggregated, the amount at issue makes litigation feasible. These economic realities make proceeding as a class action the superior mechanism.

Regarding the second prong, Plaintiff knows of no pending competing litigation.

Regarding the third prong, the desirability of concentrating litigation in a single forum, the Ohio Supreme Court and federal courts have observed that a "class action is the preferable method for dealing with … a party's recurring malfeasance, because the ability to avoid duplicating a court's time, effort, and resources is an important and relevant consideration." *In Re Consol. Mort. Satisfaction Case,* 97 Ohio St.3d 465, 470 (2002); see also e.g. *Upshaw v. Georgia (GA) Catalog Sales, Inc.,* 206 F.R.D. 694, 701-701 (M.D. Georgia 2002); *Castano v. American Tobacco Co.,* 84 F.3d 734, 740 (5th Cir. 1996). Based on this rationale, the third element is met: This action is designed to correct Defendants' malfeasance and concentrating litigation would avoid duplicative use of the Court's time dealing with the same legal violation.

Finally, given the straightforward nature of the class claims at hand, there are no apparent difficulties encountered in the management of this class action beyond those typical of any action. Rather, because this case revolves around specific and extremely limited violations of the law, no class management problems are foreseeable or likely. For these reasons' superiority exists.

IV. **CONCLUSION**

Wherefore, Plaintiffs Angel Miller and Steven Vanness respectfully request that this Court certify the class as defined above for class action treatment in accordance with Civ.R. 23 and applicable case law.

Respectfully submitted,

*/s/ Brian M. Garvine*
Brian M. Garvine (0068422)
Law Office of Brian M. Garvine, LLC
5 East Long Street
Suite 1100
Columbus, OH 43215
brian@garvinelaw.com
*Attorney for Plaintiffs*

*/s/ Jeremiah E. Heck*
Jeremiah E. Heck (0076742)
Luftman Heck & Associates, LLP
6253 Riverside Drive, Suite 200
Dublin, Ohio 43017
jheck@lawLH.com
*Attorney for Plaintiffs*

13

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies on May 22, 2023 a true copy of the foregoing was filed electronically. Notice of this filing will be sent by the court's mailing to:

Everything Is In Stock, LLC
 Dba Elite Restaurant Equipment
240 W. 37th Street, Suite 400
New York, NY  10018
*Defendant*

United Debt Settlement, LLC
240 W. 37th Street, Suite 400
New York, NY  10018
*Defendant*

Gabriel Gorelik
240 W. 37th Street, Suite 400
New York, NY  10018
*Defendant*

                                                */s/ Brian M. Garvine*
                                                Brian M. Garvine  (0068422)
                                                *Attorney for Plaintiffs*